# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| CHARLES SAMUEL CHERRY, | Case No. 22-CV-2012 (JRT/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| MCF-MOOSE LAKE; OFFICER ADRIANA BOOKER; UNKNOWN SUPERVISOR; SGT. MARC MAGNUSON; LT. RICH SKOGLUND, | |
| Defendants. | |

Plaintiff Charles Samuel Cherry filed this civil rights action under 42 U.S.C. § 1983. (Dkt. No. 1.) Mr. Cherry did not pay the filing fee; instead, he filed an application to proceed *in forma pauperis* ("IFP"). (Dkt. No. 3.) Because Mr. Cherry is a prisoner, this Court first calculated his initial partial filing fee pursuant to 28 U.S.C. § 1915(b). (Dkt. No. 5.) When Mr. Cherry did not pay that fee or otherwise communicate with the Court within the timeframe provided, this Court recommended that the matter be dismissed for failure to prosecute. (Report and Recommendation, Dkt. No. 6.) This Court vacated that recommendation, however, after Mr. Cherry later paid the filing fee. (Order, Dkt. No. 10.)

Mr. Cherry's Complaint is now before the Court for review pursuant to 28 U.S.C. § 1915A(a). Upon that review and for the reasons outlined below, this Court recommends that all claims in the Complaint be dismissed without prejudice, except Mr.

Cherry's claim that Officer Booker sexually harassed him in violation of the Eighth Amendment prohibition on cruel and unusual punishment.

## BACKGROUND

Mr. Cherry claims that, as an inmate at MCF-Moose Lake, he had what he describes as a "platonic relationship" with Officer Booker.[1] According to Mr. Cherry, on July 15, 2022, he approached Officer Booker and asked her if he could hand her a letter. After requesting and obtaining multiple assurances from her that it would be "ok" to give her the letter, he handed it to her, but approximately 30 minutes later, he was told to report to the staff desk where he was taken into custody and placed on administrative segregation status without explanation.

Mr. Cherry claims that he received a piece of paper in the middle of the night on July 22, 2022, saying that he was on "pre-hearing detention status," but the paperwork did not explain why or for how long. Mr. Cherry claims that on July 25, 2022, Sgt. Magnuson and Officer Pahl came to his cell and handed him paperwork saying that he had been charged with four counts: (1) 345-sexual misconduct towards staff; (2) 345-sexual misconduct towards staff (RCV) risk code violation; (3) 350-soliciting/bribery; and (4) 310-threatening others. Mr. Cherry contends that he initially denied all the allegations because he is not guilty of the charges, but then Sgt. Magnuson forced him to take a plea deal because he was rushed and threatened him with 240 days of extended incarceration

---

[1] Although Mr. Cherry is now in custody at MCF-Rush City, he was incarcerated at MCF-Moose Lake at the time he filed this matter and at all times relevant to the facts alleged in his Complaint.

(EI) if he requested a hearing. He also alleges that Officer Booker failed to follow proper procedure because her incident report does not note that she told him to give her the letter. Mr. Cherry claims that he ultimately accepted two of the charges, the remaining two charges were dismissed, and he received 23 days in "seg" and a RCV as punishment. Although Mr. Cherry does not describe the content of the letter, he maintains that it was not sexual, derogatory, or threatening in nature and that it did not contain any efforts to solicit or bribe anyone.

Mr. Cherry alleges that he and Officer Booker had been "playfully flirting" with each other for six to seven months prior to this incident. According to Mr. Cherry, they talked about their personal lives outside of MCF-Moose Lake and complimented each other. Mr. Cherry claims that when Officer Booker searched him leaving the dining hall once, she touched his penis and rated his body a "five out of five" on her point system. Mr. Cherry also claims that Officer Booker initially offered to send a video of the Fourth of July fireworks to his J-pay account but then told him that she ended up staying home that evening. Mr. Cherry further claims that Officer Booker gave him her Instagram account information, including her full name and a description of her Instagram profile picture.

Mr. Cherry alleges that Officer Booker took advantage of him, in violation of the Eighth Amendment prohibition against cruel and unusual punishment, because he is a vulnerable adult male incarcerated at MCF-Moose Lake. Moreover, Mr. Cherry claims that Officer Booker's unnamed supervisor failed to properly supervise and train her. Mr. Cherry further alleges that Sgt. Marc Magnuson discriminated against him based on his race, age, or sex, and treated Officer Booker better than him based on her race, age, sex, and title.

Mr. Cherry further claims that Sgt. Magnuson has a reputation for being racist and for concocting risk code violations to transfer African American inmates out of MCF-Moose Lake. Mr. Cherry alleges that the negligent training and supervision of Sgt. Magnuson by Lt. Rich Skoglund caused the constitutional and policy violations. According to Mr. Cherry, he has reported Officer Booker and Sgt. Magnuson's misconduct to "OSI" and was told that OSI would investigate the report as well as the punishment he received.

Mr. Cherry further claims that this incident prevented him from graduating from his computer class, attending boot camp, being transferred to a minimum-security prison, participating in work release, and starting a new job at Garments Working Interstate in Industry, intentionally causing him extreme emotional distress. Mr. Cherry requests punitive damages for pain and suffering.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court must dismiss a prisoner's complaint, or any portion of the complaint, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). The factual allegations need not be detailed, but they must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, the complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. "A claim

4

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although pro se complaints, such as this one, are entitled to a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), they must nevertheless contain specific facts in support of the claims it advances. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## LEGAL ANALYSIS

Mr. Cherry brings several claims. The claims that generally fall under the umbrella of a 42 U.S.C. § 1983 action—allegations of cruel and unusual punishment, negligent training and supervision of officers, sexual harassment, entrapment, and discrimination—are addressed first.

### A.  42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege a violation of a constitutional right committed by a person acting under color of state law." *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006). Mr. Cherry alleges violations of the Eighth Amendment prohibition against cruel and unusual punishment and the Equal Protection Clause of the Fourteenth Amendment.

### 1.  Eighth Amendment

The Eighth Amendment prohibition on "cruel and unusual punishment" forbids prison officials from using excessive force. *Farmer v. Brennan*, 511 U.S 825, 832 (1994). And it "imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing,

5

shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (internal citation omitted). A prison official, then, violates the Eighth Amendment when two conditions are met: "(1) the deprivation alleged is sufficiently serious—the prison official's act or omission results in the denial of the minimal civilized measure of life's necessities; and (2) the prison official acts with 'deliberate indifference'—he knows of and disregards an excessive risk to an inmate health and safety." *Brown v. Nix*, 33 F.3d at 951, 955 (8th Cir. 1994).

Here, the Court views Mr. Cherry as alleging two violations of the Eighth Amendment in his Complaint. First, Mr. Cherry takes issue with the punishment and subsequent sanction he received for handing Officer Booker the letter. Second, Mr. Cherry alleges Officer Booker touched his penis and rated his body a "five out of five on her point system" during a patdown search after he left the dining hall a "few months" prior to him filing the Complaint. (Compl. at 5, Dkt. No. 1.) The Court understands this second allegation as the factual predicate to his sexual harassment claim. (*Id.*)

Regarding the first claim, Mr. Cherry does not get past the first condition. He alleges no facts suggesting that prison officials denied him life's basic necessities in punishing him for the letter he handed to Officer Booker. Mr. Cherry reports that he received 23 days in "seg" and an RCV as a sanction for this incident, but he alleges no facts suggesting that the conditions of "seg" fell below civilized standards of decency in violation of the Eighth Amendment. The Eighth Amendment requires courts to "look at the specific conditions [of confinement] to ensure that they were not cruel and unusual." *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003). Here, Mr. Cherry offers no description of the conditions of "seg"

6

at all, let alone proffer any facts suggesting that such conditions constitute cruel and unusual punishment. The Court will therefore recommend that Mr. Cherry's Eighth Amendment claim be dismissed.

In the Court's view, however, the gravamen of Mr. Cherry's Complaint is that the sanction he received—23 days in "seg" and a RCV—in addition to the consequences incidental to that sanction—transfer to a higher security prison, loss of employment, loss of the opportunity to participate in boot camp or work release— are disproportionate to the conduct that prompted the sanction, especially considering that Officer Booker told him it was "ok" to give him the letter and he had no prior violations. Liberally construing Mr. Cherry's pro se complaint, the Court takes this claim to allege a violation of the Due Process Clause of the Fourteenth Amendment.

To prevail on a Fourteenth Amendment due process claim, Mr. Cherry "must first demonstrate that he was deprived of life, liberty or property by government action." *Phillips*, 320 F.3d at 846. Mr. Cherry does not allege a deprivation of life or property so he must identify a liberty interest to establish a due process claim. In the prison context, liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

The sum total of Mr. Cherry's punishment, incidental collateral consequences included, does not qualify as a liberty interest triggering the protections of the Due Process

Clause. Mr. Cherry's period of incarceration was not extended; indeed, Mr. Cherry admits that he did not request a hearing on the charges, acknowledging that if he had done so, the hearing officer could have extended his period of incarceration if he had been found guilty of the charges. (Compl. at 2, Dkt. No. 1.) Further, his punishment does not amount to an "atypical and significant hardship" triggering a liberty interest. Although Mr. Cherry received 23 days in "seg," courts have "consistently held that administrative and disciplinary segregation are not atypical and significant hardships." *See Portley-El v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002). Whereas the RCV resulted in his transfer to a higher security facility, there is no liberty interest in assignment to any particular prison. *See Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996). Losing a job opportunity, moreover, does not constitute an "atypical and significant" hardship. *See Smith v. McKinney*, 954 F.3d 1075, 1083 (8th Cir. 2020) (concluding that "loss of employment, wages, security classification, security points, and inmate tier status" upon transfer do not amount to an "atypical and significant hardship" under the law); *Freitas v. Ault*, 109 F.3d 1335, 1337 (8th Cir. 1997) (concluding that loss of a higher paying job and other privileges did not amount to an "atypical and significant hardship"); *Kennedy v. Blankenship*, 100 F.3d 640, 642 n.2 (8th Cir. 1996) (concluding that inmate's loss of "the privilege of working and the accompanying good time credits" while in isolation did not constitute atypical hardship).

Finally, Mr. Cherry complains that Officer Booker did not follow the relevant institutional policies in writing her report on the incident, but "there is no federal constitutional liberty interest in having state officers follow state law or prison officials

follow prison regulations." *Blankenship*, 100 F.3d at 643. Because Mr. Cherry's punishment in response to the infraction does not constitute an "atypical and significant hardship," he has not established a cause of action alleging a due process violation.

Mr. Cherry's second Eighth Amendment claim is a different matter. Sexual harassment or abuse of an inmate by a prison guard may constitute the unnecessary and wanton infliction of pain in violation of the Eighth Amendment. *Freitas*, 109 F.3d at 1338; *see also Howard v. Everett*, No. 99-1277, 2000 WL 268493, at *1 (8th Cir. Mar. 10, 2000) (although prison guard's "sexual comments and gestures were reprehensible," such "sexual harassment, absent contact or touching, does not constitute unnecessary and wanton infliction of pain" sufficient to sustain a claim under the Eighth Amendment). Accordingly, this Court does not recommend that Mr. Cherry's claim alleging that Officer Booker violated the Eighth Amendment by touching his penis and rating his body a "five out of five on her point system" during a patdown search when he left the dining hall be dismissed at this time. *See Williams v. Prudden*, 67 F. App'x 976, 977 (8th Cir. 2003) (concluding that plaintiff sufficiently alleged an Eighth Amendment claim "by alleging that [defendant] forcibly ground his pelvis against her, grabbed her breast, verbally demanded sexual favors, made physical advances, and attempted to force himself upon her").[2]

---

[2] This Court is not prepared to say that Mr. Cherry has stated a claim on which relief may be granted, only that the Complaint presents a claim for relief that is colorable enough that it survives review under § 1915(e)(2)(B). Nothing in this Report and Recommendation precludes Defendant Booker from seeking dismissal of the claim.

### 2. Fourteenth Amendment Equal Protection Claims

Mr. Cherry makes two equal protection claims: (1) Sgt. Magnuson treated Officer Booker "better than" him because of her race, age, sex, and title; and (2) Sgt. Magnuson discriminated against him because of his race, age, or sex. (Compl. at 2-3.)

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). The first step in an equal protection case, therefore, "is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her." *Id.; see also Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999) (the court's analysis of equal protection claims begins by asking whether the plaintiff has shown that he has been treated differently than others similarly situated). "Absent a threshold showing that [the plaintiff] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Id.*

Here, Mr. Cherry fails to establish that he and Officer Booker are similarly situated. The differences between Mr. Cherry and Officer Booker are glaring. Mr. Cherry is a convicted felon, serving his term of imprisonment at a correctional institution; Officer Booker is not. Accordingly, Mr. Cherry's equal protection claim alleging that Sgt. Magnuson treated them differently should fail.

Mr. Cherry, moreover, fares no better alleging that Sgt. Magnuson discriminated against him based on his race. It is well-settled that "[p]risoners are protected under the

Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To establish an equal protection claim based on race discrimination, however, the plaintiff must show "an element of intentional or purposeful discrimination." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). "Discriminatory purpose can be proved with various kinds of direct and circumstantial evidence but is most often proved with evidence that similarly situated [individuals] were treated differently." *Id.* Mr. Cherry claims that Sgt. Magnuson "has a reputation of being racist and getting African Americans transferred out of MCF-Moose Lake with fake (RCV)s" (Compl. at 3), but he offers no factual support for this allegation. This wholly conclusory allegation is insufficient to state an equal protection race discrimination claim under § 1983. *See, e.g.*, *Nickens v. White*, 536 F.2d 802, 803 (8th Cir. 1976) (although pro se complaints are to be liberally construed, they must "nonetheless not be conclusory"). Thus, Mr. Cherry's equal protection claim alleging discrimination based on race likewise fails.[3]

---

[3] Mr. Cherry further alleges that he was "entrapped"; presumably he means that Officer Booker entrapped him to violate a prison rule by assuring him it was "ok" to hand her the letter but then reported the letter to prison officials. Although entrapment may serve as a basis for a due process violation, the "level of outrageousness needed to prove" such a violation is "quite high." *Gunderson v. Schlueter*, 904 F.2d 407, 410 (8th Cir. 1990). "The Supreme Court has repeatedly emphasized that the focus of the inquiry in an entrapment situation must be on the defendant's own predisposition to commit the crime, not on the tactics employed by the police to entice him into the crime." *Id.* Here, there are no allegations that Officer Booker encouraged Mr. Cherry to write the letter, told him what to put in the letter or even knew what was in the letter when she told him to "go get it." (Compl. at 2.) Further, by his own admission, he asked Officer Booker multiple times if he could hand it to her. Accordingly, Officer Booker's conduct in all of this does not rise to the level of conduct that "shocks the conscience" and constitutes a due process violation.

**B. Remaining Claims**

The Court turns now to Mr. Cherry's remaining claims. Mr. Cherry claims that the facts in his Complaint establish a cause of action for pain and suffering, intentional infliction of emotional distress, criminal sexual conduct, and obstruction of justice.[4] Of these claims, criminal sexual conduct and obstruction of justice are state criminal charges. *See* Minn. Stat. §§ 609.342-609.3451 (defining the crimes of criminal sexual conduct); Minn. Stat. § 609.50 (defining the crime of obstructing legal process). This Court has no authority to initiate criminal prosecution. U.S. Const. art. II, § 2; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992) (limiting the jurisdiction of federal courts to justiciable cases and controversies). Pain and suffering is a basis for the recovery of damages, not a separate cause of action. *See Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1193 (8th Cir. 2000) (explaining that awards for "pain and suffering are highly subjective and should be

---

[4] Mr. Cherry also alleges "negligent training and supervision." To the extent that Mr. Cherry claims that the supervisors of Officer Booker and Sgt. Magnuson are liable under § 1983 for the torts of their subordinates for failure to supervise and train, this claim fails. For a supervisor to be liable under § 1983 on this theory, the plaintiff must show that the supervisor's "failure to supervise and train amounts to deliberate indifference to the rights of the persons with whom [the tortfeasor] came into contact." *Doe v. Fort Zumwalt R-II School Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Because Mr. Cherry fails to establish any cause of action against Sgt. Magnuson for violating his constitutional rights, he cannot claim a failure to train and supervise against Lieutenant Skoglund, Sgt. Magnuson's supervisor. Further, as to Officer Booker's supervisor, who is identified in the Complaint as "Unknown Supervisor," Mr. Cherry simply alleges that "[her] supervisor failed to properly train and supervise her." (Compl. at 4, Dkt. No. 1). Such conclusory statements, however, are simply insufficient to state a plausible claim of supervisory liability. *See Twombly*, 550 U.S. at 555 (to survive a motion to dismiss, a plaintiff's obligation to provide the "grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

committed to the sound discretion of the jury"). Mr. Cherry, moreover, has not established a claim for intentional infliction of emotional distress.

The state tort of intentional infliction of emotional distress requires proof that: "(1) the conduct complained of was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; (4) and the distress suffered was severe." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 663 (Minn. 1999) (citing *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983)). The tort "is sharply limited to cases involving particularly egregious facts." *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003).

Here, even if Mr. Cherry pleaded sufficient facts to satisfy the first two elements of the claim, the claim would nevertheless fail because he does not allege any particularized facts suggesting that the conduct caused him emotional distress, or that the distress he suffered was severe. *See Langeslag*, 664 N.W.2d at 868 ("Just as the plaintiff must meet a high threshold of proof in proving the extreme nature of conduct, the plaintiff must also meet a high threshold of proof regarding the severity of the mental distress."). Minnesota has adopted the following definition of severe emotional distress: "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* at 869 (citing *Hubbard*, 330 N.W.2d at 439). Mr. Cherry merely alleges that the punishment he received in response to handing Officer Booker the letter caused him "extreme emotional distress." (Compl. at 3.) He does not allege how this distress manifested itself, and he does not allege that he suffered any emotional distress at all in response to Officer Booker's alleged sexual harassment. Such conclusory allegations are

13

not sufficient to sustain a claim of intentional infliction of emotional distress. Accordingly, this claim should fail.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Plaintiff Charles Samuel Cherry's claims be **DISMISSED WITHOUT PREJUDICE**, except his Eighth Amendment claim against Officer Booker for sexual harassment.

Dated: January 17, 2023                    ___s/ John F. Docherty_____
                                           JOHN F. DOCHERTY
                                           United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).