UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Charles Samuel Cherry, | Case No. 22-cv-2012 (JRT/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Officer Adriana Booker, | |
| Defendant. | |

This matter is before the Court on Defendant Adriana Booker's Motion to Dismiss Plaintiff Charles Samuel Cherry's official-capacity claims against her, (Doc. 20), and her Motion to Dismiss Mr. Cherry's individual-capacity claims against her as well, (Doc. 35). These Motions have been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons below, the Court recommends that Officer Booker's Motion to Dismiss Plaintiff's official-capacity claims against her be granted for lack of subject-matter jurisdiction, but her Motion to Dismiss Plaintiff's individual-capacity claims against her be denied.

## BACKGROUND

On August 15, 2022, Mr. Cherry filed this civil rights action under 42 U.S.C. § 1983. (Doc. 1.) The Court has already dismissed some allegations in his Complaint—namely, all "except his Eighth Amendment claim against Officer Booker for sexual

harassment." (Doc. 17.) Therefore, the Court will recount only those surviving allegations that remain relevant to the Motions to Dismiss now before the Court.

Mr. Cherry alleges that, as an inmate housed at the Minnesota Correctional Facility in Moose Lake, Minnesota ("MCF-Moose Lake"),[1] he and Officer Adriana Booker had a "platonic relationship" and had been "playfully flirting with one another for 6–7 months." (Doc. 1 at 2.) According to Mr. Cherry, they "discussed [their] personal lives outside of [the] Moose Lake Facility" and "complimented one another when [they saw] each other." (*Id.*) He further alleges that Officer Booker offered to send a video of a "fireworks show on the evening of the 4th of July" to his prison email account (although she did not do so), and that she gave Mr. Cherry her Instagram account information so he could find her online profile. (*Id.*)

As it relates to the remaining claims in his lawsuit, Mr. Cherry alleges that during a pat-down search, Officer Booker touched his penis, simultaneously telling Mr. Cherry that she rated his body "a 5 out of 5 on her point system." (*Id.* at 2, 5.) Based on this incident, Mr. Cherry alleges that Officer Booker acted unconstitutionally by engaging in sexual touching of his body accompanied by sexual comments when she understood the disparity of power between them because he is a vulnerable prisoner, in violation of the Eighth Amendment prohibition against cruel and unusual punishment. (*Id.* at 2, 5.) As relief for

---

[1] Although Mr. Cherry is now housed at the Minnesota Correctional Facility located in Rush City, Minnesota ("MCF-Rush City"), he resided at MCF-Moose Lake at all times relevant to the facts alleged in his Complaint.

the alleged constitutional violations, Mr. Cherry is seeking $33 million "in punitive damages for pain and suffering." (*Id.* at 5.)

In response, Officer Booker brings Motions to Dismiss both the official- and individual-capacity claims against her, which are now before this Court. In her first Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1), Officer Booker claims that the Court lacks subject-matter jurisdiction to consider Mr. Cherry's official-capacity claims against her for two reasons. First, she argues that as a state employee, official-capacity claims cannot be brought against her in federal court under the Eleventh Amendment unless Congress abrogates Minnesota's immunity to § 1983 claims, or Minnesota waives its Eleventh Amendment immunity. Neither being true here, she argues that sovereign immunity shields her from the official-capacity claims in the Complaint, and therefore, the Court lacks subject-matter jurisdiction to decide them. Second, Officer Booker contends that even if sovereign immunity did not shield her from Mr. Cherry's official-capacity claims, he cannot pursue a § 1983 official-capacity claim against her because the plain language of § 1983 requires that a "person" must have deprived a plaintiff of their constitutional rights, and neither states nor their employees acting in their official capacities are "persons" for purposes of § 1983 liability. (*See generally* Doc. 21.)

In her second Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), Officer Booker argues that the Court should dismiss Mr. Cherry's individual-capacity claims against her because—even if his allegations are taken as true—they fail to state a claim upon which relief can be granted for three reasons. First, she contends that a one-time pat-down search that involved sexual touching and sexual

3

comments does not rise to the level of an Eighth Amendment violation without accompanying allegations that Mr. Cherry suffered resulting pain and also that Officer Booker had a sufficiently culpable state of mind. She argues that he alleges neither. Second, Officer Booker asserts that even if Mr. Cherry had adequately pled an Eighth Amendment claim, he is not entitled to monetary punitive damages (the only relief he sought) because he has not alleged what is required to open the door to punitive damages under the applicable Prison Litigation Reform Act ("PLRA") and § 1983 frameworks: namely, a physical injury or a sexual act, plus culpable intent or recklessness. Finally, Officer Booker claims that she is immune from liability for the punitive damages claimed because she has qualified immunity as a government official. (*See generally* Doc. 36.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 8 contains the general pleading standard that a complaint must meet. Rule 8 requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may challenge the sufficiency of a complaint in several ways under Federal Rule of Civil Procedure 12. *See* Fed. R. Civ. P. 12. Two are relevant here.

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction to decide an action or particular claims asserted in a complaint. *See* Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions may either challenge the complaint's claim of jurisdiction on its face or attack the underlying factual basis for jurisdiction. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "A facial challenge to subject-matter jurisdiction argues that factual allegations made in a complaint—even if truthful—are insufficient to

establish jurisdiction." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1026 (D. Minn. 2015) (citing *Carlson Holdings, Inc. v. NAFCO Ins. Co.*, 205 F. Supp. 2d 1069, 1073 (D. Minn. 2001)). Courts should consider only the pleadings, and nothing more, when analyzing a facial challenge to jurisdiction. *Id.*

Another of Rule 12's challenges, Rule 12(b)(6), requires dismissal when a complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Montgomery*, 98 F. Supp. 3d at 1026 (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts the factual allegations as true and views them most favorably to Plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

The Court also notes that Mr. Cherry is acting *pro se* in this matter. When assessing the sufficiency of a complaint by a *pro se* plaintiff, courts should apply "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); citing Fed R.

5

Civ. P. 8(f)). "If the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Even so, a *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d at 914). "[I]n fulfilling its duty to liberally construe a civil-rights pleading," a court need not "divine the litigant's intent and create claims that are not clearly raised," nor "read or construct an argument into a civil-rights pleading." *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004) (discussing *Nickens v. White*, 536 F.2d 802, 803–04 (8th Cir. 1976)). Courts are also not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone*, 364 F.3d at 915.

## DISCUSSION

**I.     Plaintiff's official-capacity claims under Rule 12(b)(1) should fail for lack of subject-matter jurisdiction.**

Mr. Cherry alleges that Officer Booker, while acting as a Minnesota prison officer, violated his constitutional rights. (Doc. 1 at 2, 5.) In her Motion to Dismiss the official-capacity claims against her, Officer Booker argues that the Court lacks subject-matter jurisdiction to decide such claims because her alleged actions occurred while she was working as an officer of the State of Minnesota.

Section 1983 provides a way for federal courts to hear complaints about deprivations of civil liberties, but not for claims alleging that a state has caused the

deprivation of those rights. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Officer Booker, as a governmental official, can be sued only in her official capacity to the extent that the State of Minnesota can be sued. *See Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 n.55 (1978) (stating that official-capacity suits are "another way of pleading an action against an entity of which an officer is an agent"). "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Based on the state of the law, there are several reasons why Mr. Cherry's § 1983 claim against Officer Booker in her official capacity cannot survive. First, to sue under § 1983, Officer Booker—and therefore, Minnesota—must be considered a "person." *See* 42 U.S.C. § 1983 ("Every *person* who, under color of any statute . . . of any State . . . , subjects . . . any citizen . . . or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable . . . .") (emphasis added). While it is true that "state officials literally are persons[,]" because an official-capacity suit is "against the official's office[,]" the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). On this basis, Mr. Cherry's official-capacity claims against Officer Booker must be dismissed for lack of subject-matter jurisdiction because she is not a "person" who can be liable under § 1983 in her official capacity.

Another barrier to Mr. Cherry's official-capacity claim against Officer Booker is the Eleventh Amendment. "The doctrine of sovereign immunity derives from the Eleventh

Amendment and prohibits an individual from suing a state, regardless of the relief sought, unless the state consents to suit or Congress abrogates state immunity." *Hussein v. Minnesota*, No. 19-cv-1913 (DSD/TNL), 2019 WL 5693733, at *1 (D. Minn. Nov. 4, 2019) (citing U.S. Const. amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–56 (1996); *Klingler v. Dep't of Revenue*, 455 F.3d 888, 893 (8th Cir. 2006)), *aff'd*, No. 19-3454, 2020 WL 2465352 (8th Cir. Jan. 21, 2020). Minnesota has not consented to be sued under § 1983, *see Hussein*, 2019 WL 5693733, at *2 (collecting cases), nor has Congress abrogated the State's sovereign immunity when it enacted § 1983, *see Will*, 491 U.S. at 66 (citing *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472–73 (1987); *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). Thus, sovereign immunity independently bars Mr. Cherry's official-capacity claim.

Accordingly, finding that the face of the Complaint demonstrates that the Court has no subject-matter jurisdiction over Officer Booker in her official capacity for the claims alleged, the Court recommends that Mr. Cherry's official-capacity allegations be dismissed for lack of subject-matter jurisdiction.

## II. Plaintiff's individual-capacity claims under Rule 12(b)(6) state a plausible claim upon which relief could be granted.

Mr. Cherry also alleges that Officer Booker, in her personal capacity, violated his constitutional rights. (Doc. 1 at 2, 5.) In her Motion to Dismiss Mr. Cherry's individual-capacity claims against her, Officer Booker argues that Plaintiff's Complaint fails to allege viable claims and should be dismissed.

Individual-capacity claims may be properly brought under § 1983 and "seek to impose personal liability upon a government official for actions [they] take[] under color of state law[.]" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *2 (D. Minn. Apr. 18, 2019), *R. & R. adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019). To adequately plead § 1983 claims against Officer Booker, Mr. Cherry must plausibly allege that Officer Booker was a state actor, who acted under color of state law to deprive Mr. Cherry of one or more federal constitutional rights. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). "Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)).

Mr. Cherry alleges that Officer Booker used the power of her state office during a routine pat-down search to intentionally touch his genitals and then made a personal, sexually-suggestive comment objectifying Mr. Cherry's body related to that touching. (Doc. 1 at 2, 5.) There is no dispute that Officer Booker was a state actor (a Minnesota prison officer) acting under color of state law. The dispute here turns on whether Mr. Cherry's allegations, if taken as true, would demonstrate that such touching and comments violated his constitutional right to serve his sentence free of "cruel or unusual punishment" under the Eighth Amendment. *See* U.S. Const. amend VIII.

The Eighth Circuit has held that "because the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain

9

circumstances, constitute the unnecessary and wanton infliction of pain . . . forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (cleaned up) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986); citing *Boddie v. Schnieder*, 105 F.3d 857, 860–61 (2d Cir. 1997); *Harris v. Ostrout*, 65 F.3d 912, 915–16 (11th Cir. 1995) (per curiam); *Jordan v. Gardner*, 986 F.2d 1521, 1524–25 (9th Cir. 1993) (en banc)). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Taking Mr. Cherry's allegations as true and drawing all reasonable inferences in favor of him as required, the Court finds that Officer Booker's alleged physical touching accompanied by verbal sexual harassment implicates the Constitution. *See Baker v. Tallant*, No. 14-cv-4104 (SOH/BAB), 2015 WL 4716311, at *3 (W.D. Ark. Aug. 7, 2015) (citing *Seltzer-Bey v. Delo*, 66 F.3d 961, 962–63 (8th Cir. 1995) (holding that a prison officer's sexual comments coupled with daily strip searches and rubbing of the prisoner's buttocks with a night stick implicated the Eighth Amendment); *Watson v. Jones*, 980 F.2d 1165, 1165–66 (8th Cir. 1992) (holding that a prison officer's daily pat-down searches, tickling, and deliberate examination of genital areas implicated the Eighth Amendment); *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) ("An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant.")).

Officer Booker argues that Mr. Cherry's Complaint fails to allege a viable individual-capacity claim under the standards set forth in *Freitas*, 109 F.3d at 1338, and *Berryhill v. Schriro*, 137 F.3d 1073, 1076–77 (8th Cir. 1998), however, the Court finds that these cases are distinguishable. As an initial matter, both the *Freitas* and *Berryhill* opinions are procedurally distinguishable because those rulings came after the parties had the benefit of discovery and motions practice. Specifically, *Freitas* resulted from an appeal of a bench trial, and *Berryhill* from an appeal of a summary judgment decision. *See Freitas*, 109 F.3d at 1336–37; *Berryhill*, 137 F.3d at 1074. Considering the early stage of this case by comparison, the Court finds that these opinions lack direct applicability to ruling on the sufficiency of Mr. Cherry's (*pro se*) pleadings, but nevertheless considers Officer Booker's specific arguments as follows.

Officer Booker first urges the Court to find *Freitas* and *Berryhill* show that Mr. Cherry has not alleged fundamental elements of sexual harassment or abuse that would violate the Eighth Amendment: namely, he has not alleged that Officer Booker's actions objectively caused him pain, and that she subjectively had a culpable state of mind. By way of comparison, in *Freitas*, a prison official and a prisoner had engaged in a romantic relationship that involved, among other things, kissing, hugging, and sexually-suggestive letters. *Freitas*, 109 F.3d at 1337. When the prisoner learned that the officer had other romantic relationships, he became jealous and reported to her superiors that the officer had sexually harassed him. *Id.* The Eighth Circuit held that the prisoner "ha[d] not established the existence of the objective component of a cause of action under the Eighth Amendment" because "ample evidence support[ed] the trial court's finding that their

11

relationship was consensual[.]" *Id.* at 1339. By way of another factual comparison, in *Berryhill*, four prison maintenance workers "grabbed [a prisoner] by the shoulders" and two of the workers "grabbed his buttocks[.]" *Berryhill*, 137 F.3d at 1074–75. The Eighth Circuit found the prisoner had not proved that he had sustained an objectively serious physical or psychological injury, pointing out that "[a]ccording to Berryhill's deposition testimony, the brief touch to his buttocks lasted mere seconds, it was not accompanied by any sexual comments or banter, and he thought the defendants were trying to embarrass him, not rape him." *Id.* at 1076.

Here, there has been no discovery, no testing of the evidence via a bench trial or motion for summary judgment, and no finding made concerning the nature of the parties' relationship[2] or of the incident itself. Instead, before the Court are Mr. Cherry's allegations

---

[2] The Court understands one implication of Officer Booker's reliance on *Freitas* to be that Mr. Cherry's relationship with Officer Booker was consensual. First, the Court cannot make such a finding based on the pleadings alone: it is true that Mr. Cherry himself alleges he had a flirtatious relationship with Officer Booker, but he also characterizes that relationship as platonic. It would be error for the Court to hold that Mr. Cherry welcomed sexually-harassing and assaultive conduct by maintaining a friendly or flirtatious relationship with his assailant. Beyond that, many courts have found that contemporary social standards of decency concerning sexual harassment, abuse, and assault have changed, and those courts question whether prisoners *could* consent to sexual relationships with prison officials because of the significant power imbalance between the parties where virtually every aspect of a prisoner's life and well-being are under prison employees' control—akin to a relationship like an adult and minor, or teacher and student—which are relationships often recognized as legally coercive regardless of the specific facts of the relationship. *See Caskey v. S. Dakota State Penitentiary*, No. 4:14-cv-4010 (KES), 2015 WL 7345763, at *21–22 (D.S.D. Sept. 29, 2015) (collecting cases, law review articles, and a non-governmental organization's report), *R. & R. adopted*, 2015 WL 7306432 (D.S.D. Nov. 19, 2015). At the very least, here, consent will not be assumed based on the allegations viewed in the light most favorable to Plaintiff that Mr. Cherry was "vulnerable" and "[taken] advantage" of by Officer Booker. (Doc. 1 at 2, 5.)

about an incident of sexual touching accompanied by sexual comments initiated by Officer Booker during a pat-down, which Mr. Cherry alleges resulted in an Eighth Amendment violation causing him pain and suffering. (Doc. 1 at 2, 5.) The Eighth Circuit has recognized that sexual touching accompanied by sexual comments may amount to sexual harassment and abuse that is itself a physical injury that is more than de minimis for purposes of the Eighth Amendment. *See Williams v. Prudden*, 67 F. App'x 976, 977–78 (8th Cir. 2003) (citing *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999) (holding sexual assaults qualify as physical injuries as matter of common sense, and sexual assaults certainly constitute more than de minimis injury) (additional citations omitted)). Therefore, viewing the allegations here in the light most favorable to Plaintiff, the Court declines to find that Mr. Cherry's Complaint fails to allege that he objectively suffered pain resulting from Officer Booker's alleged actions and will not recommend dismissal under Rule 12(b)(6) on this basis at this early stage.

    Likewise, Officer Booker relies on *Freitas* to argue that Mr. Cherry has not sufficiently alleged that she subjectively acted with a culpable state of mind. The Court respectfully disagrees. Mr. Cherry alleges that Officer Booker "took advantage" of her position of power to engage in her conduct, and the Court finds that her verbal comment rating his body "a 5 out of 5 on her point system [while] she touched [his] penis during a pat search" plausibly gives rise to the reasonable inference that she engaged in the alleged sexual touching with—if not the intent to gratify her sexual desires without Mr. Cherry's consent—at least reckless or callous indifference to Mr. Cherry's right to be free from actions by a corrections officer that serve no legitimate penological purpose, may cause

severe physical and psychological harm, and that offend the contemporary social standards of decency concerning sexual harassment and abuse under the Eighth Amendment. *See Baker*, 2015 WL 4716311, at \*3 (citation omitted); *Freitas*, 109 F.3d at 1338 (citations omitted). Therefore, the Court cannot find on the face of the Complaint—when viewed in the light most favorable to Plaintiff—that Officer Booker so clearly lacked unlawful intent that Mr. Cherry's Eighth Amendment claim fails at this early stage of litigation.

Finally, Officer Booker argues that even if Mr. Cherry sufficiently alleged an Eighth Amendment claim—as the Court has found above—Mr. Cherry is not entitled to his requested relief of $33 million in punitive damages for three reasons: (1) he failed to allege that Officer Booker had either evil intent or at least reckless indifference to his federally protected rights; (2) such relief is barred under the PLRA absent a physical injury; and (3) Officer Booker is shielded by qualified immunity.

As an initial matter, the Court notes that while Mr. Cherry's requested relief includes the descriptor "punitive" concerning damages, it indicates those damages are "for pain and suffering." (Doc. 1 at 5.) Construing Mr. Cherry's *pro se* Complaint liberally, *see Pardus*, 551 U.S. at 94, Mr. Cherry seeks compensation for the alleged consequences that he suffered because of Officer Booker's alleged Eighth Amendment violation. Therefore, it is not clear to this Court on the face of the Complaint that Mr. Cherry is seeking punitive damages, or that he is seeking *only* punitive damages. *See Solomon*, 795 F.3d at 787. "The basic purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Fernandez v. St. Louis Cnty., Missouri*, 538 F. Supp. 3d 888, 904 (E.D. Mo. 2021) (quoting *Memphis Comm. Sch. Dist. v. Stachura*, 477

14

U.S. 299, 307 (1986) (cleaned up)). Such damages may include "out-of-pocket loss, monetary harm, harm to reputation, humiliation, mental anguish, and suffering." *Id.* (citing *Memphis Comm. Sch. Dist.*, 477 U.S. at 307). Mr. Cherry has alleged that he seeks to recover damages for his "pain and suffering," a viable request for compensatory relief contemplated by § 1983. (Doc. 1 at 5.) Therefore, the Court finds that Mr. Cherry's Complaint should survive Defendant's Motion to Dismiss concerning damages where his allegations can be construed as seeking compensatory relief.

Nevertheless, Defendant's Motion focuses solely on the theory of punitive damages. The Court finds that even under such a theory of relief, Plaintiff's Complaint still survives her Motion. To be awarded punitive damages in a § 1983 action, a plaintiff must demonstrate that a "defendant's conduct is shown to be motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." *McAdoo v. Martin*, 899 F.3d 521, 527 (8th Cir. 2018) (quoting *Schaub v. VonWald*, 638 F.3d 905, 922 (8th Cir. 2011) (cleaned up)); *accord Washington v. Denney*, 900 F.3d 549, 563–64 (8th Cir. 2018). "Proving reckless indifference . . . requires evidence that the defendant acted 'in the face of a perceived risk that [their] actions [would] violate federal law.'" *McAdoo*, 899 F.3d at 527 (quoting *Swipies v. Kofka*, 419 F.3d 709, 718 (8th Cir. 2005)) (cleaned up). "Punitive damages punish a defendant for outrageous, intentional, or malicious conduct, and deter similar extreme conduct in the future." *Schaub*, 638 F.3d at 922–23 (footnote and citations omitted). Whether a defendant's conduct was motivated by an evil intent—or was at least recklessly indifferent to a plaintiff's federally protected rights—is a question of fact. *Id.* at 923 (citation omitted). Thus, "[w]hile an award of

compensatory damages is mandatory upon a finding of liability, 'punitive damages are awarded or rejected in a particular case at the discretion of the fact finder once sufficiently serious misconduct by the defendant is shown.'" *Denney*, 900 F.3d at 563 (quoting *Coleman v. Rahija*, 114 F.3d 778, 787 (8th Cir. 1997)). "The factfinder focuses on the defendant's intent in determining whether to award punitive damages 'and whether the defendant's conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards.'" *Id.* at 563–64 (citing *Coleman*, 114 F.3d at 787).

In its analysis above, the Court found that Mr. Cherry has stated a sufficient Eighth Amendment claim for sexual harassment and abuse by Officer Booker in his Complaint. Moreover, based on the allegations as pleaded taken in the light most favorable to Plaintiff, the Court finds it beyond credulity that a reasonable prison officer could believe that conducting a pat-down search of a prisoner—during which they intentionally touched that prisoner's genitals while making a sexually-suggestive comment—would not risk violating any federally-protected right of that prisoner. Perhaps the development of facts during discovery will show that Officer Booker's conduct is not the sort that justifies punitive damages, or alternatively, perhaps even if § 1983 liability is found, the facts will not lend themselves to the type of behavior that requires punitive deterrence and punishment. *See Benson v. Piper*, No. 17-cv-266 (DWF/TNL), 2019 WL 2017319, at *29 (D. Minn. Jan. 25, 2019) (citing *Washington*, 900 F.3d at 563), *R. & R. adopted*, 2019 WL 1307883 (D. Minn. Mar. 22, 2019). Finding that such early disposal of a fact-specific question is premature, and the Court declines to recommend dismissal of Mr. Cherry's punitive damages claim against Officer Booker at this time.

Officer Booker also argues that Mr. Cherry cannot collect punitive damages under the PLRA where Officer Booker's conduct did not involve a penetrative sexual act, but the Court disagrees. The PLRA requires that to sustain a civil action, a prisoner show either a physical injury or the commission of a sexual act, not only mental or emotional harms. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).") That definition in 18 U.S.C. § 2264 requires a penetrative sexual act.[3] Yet this focus on the "sexual act" assumes that the harm allegedly suffered here cannot constitute a "physical injury." As noted above, the Eighth Circuit has recognized that sexual touching accompanied by sexual comments may amount to sexual harassment and abuse that is itself a physical injury that is more than de minimis for

---

[3] According to § 2246, such acts may include:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
>
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
>
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

18 U.S.C. § 2246(2).

purposes of the Eighth Amendment. *See Prudden*, 67 F. App'x at 977–78 (citing *Liner*, 196 F.3d at 135). Therefore, the Court finds that the PLRA presents no bar to Mr. Cherry's pleadings at this early stage.

Finally, Officer Booker contends that she is shielded from liability by her qualified immunity. The doctrine of qualified immunity protects a government officer from liability for alleged misconduct which they reasonably believed to be lawful, or that was not clearly established as unlawful at the time the alleged misconduct occurred. The Supreme Court has held that a government officer sued in their individual capacity "may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Hafer*, 502 U.S. at 25 (citing *Graham*, 473 U.S. at 166–67). Thus, government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," are shielded from liability for civil damages by their qualified immunity. *Hartley v. Fine*, 780 F.2d 1383, 1387 (8th Cir. 1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When determining whether qualified immunity shields a defendant from liability, courts should consider (1) whether the facts alleged, when viewed in the light most favorable to the plaintiff, establish a violation of a constitutional right, and (2) whether the constitutional right at issue was so clearly established that a reasonable officer should have known their conduct was unlawful. *See El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 456 (8th Cir. 2011). Whether a constitutional right is clearly established "is a fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad

general proposition." *Id.* at 459 (quoting *Seymour v. City of Des Moines*, 519 F.3d 790, 798 (8th Cir. 2008)).

The Court finds that that it would be premature to dismiss the individual-capacity claims and relief sought against Officer Booker at this stage of the action. Mr. Cherry's allegations have important constitutional implications because physical touching accompanied by verbal sexual harassment implicates the Constitution. *See Baker*, 2015 WL 4716311, at *3 (citing *Seltzer-Bey*, 66 F.3d at 962–63; *Watson*, 980 F.2d at 1165–66; *Hively*, 695 F.3d at 643); *Berryhill*, 137 F.3d at 1076. Moreover, developments in the law on an inmate's ability to consent create other fact complications that also implicate the Constitution. *See Caskey S.*, 2015 WL 7345763, at *21–22. Finally, based on the allegations as pleaded, the Court is persuaded that a reasonable prison officer should have known that conducting a pat-down search of a prisoner—during which they intentionally touched that prisoner's genitals while making a sexually-suggestive comment—could violate a prisoner's Eighth Amendment rights. Plaintiff has alleged enough to proceed to discovery in this action, and the Court thus recommends that Officer Booker's Motion to Dismiss Mr. Cherry's individual-capacity claims against her be denied. In reaching this conclusion, this Court offers no opinion about the strength of Mr. Cherry's claims or the likelihood that such claims would survive summary judgment or prevail at trial.

## RECOMMENDATION

Based on the all the files, records, and proceedings above, **IT IS RECOMMENDED** that:

1) Defendant Adriana Booker's Motion to Dismiss Plaintiff Charles Samuel Cherry's official-capacity claims against her, (Doc. 20), be **GRANTED** for lack of subject-matter jurisdiction; and

2) Officer Booker's Motion to Dismiss Mr. Cherry's individual-capacity claims against her, (Doc. 35), be **DENIED**.


Date: July 25, 2023                        *s/Douglas L. Micko*
                                           DOUGLAS L. MICKO
                                           United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).